IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:18-CR-0203-AT-1-3 |
| | : | |
| ADOLFO ALEJANDRO RAUDA-CONSTANTINO AND ABEL DOMINGUEZ-MARTINEZ, | : | |
| Defendants. | : | |

## **ORDER**

Magistrate Judge Justin S. Anand's Report and Recommendation ("R&R") [Doc. 112] and Defendants' Rauda-Constantino and Dominguez-Martinez's Defendants' objections thereto [Docs. 119, 120] are currently before the Court in connection with Defendants' respective motions to suppress [Docs. 64, 65].[1] In a detailed R&R, the Magistrate Judge recommends denial of both motions.[2]

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447

---

[1] Defendant Dominguez-Martinez essentially adopts Defendant Rauda-Constantino's argument as to the validity of the search and makes additional arguments with this as the predicate for part of his motion to suppress.

[2] The R&R did not rule on the issue of the voluntariness of both Defendants' statements made to law enforcement officers or the officers' compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). The Magistrate Judge deferred the motions to suppress the statements to the undersigned district court judge to the extent that they seek suppressions of statements. *If the Defendants proceed to trial*, the Court will hold a separate hearing on this issue prior to the trial and require the Defendants to specify more particularly the factual voluntariness issues posed.

U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard.  The Defendants object on several factual and legal grounds to the Magistrate Judge's Report and Recommendation.  The Court has in turn carefully reviewed the issues raised in their respective suppression motions on a de novo basis.

Defendant Rauda-Constantino's ("Rauda's) motion to suppress geolocational cell phone data is based on two central grounds.  First, Defendant Rauda argues that suppression is warranted under *Franks v. Delaware*, 438, U.S. 154 (1978) because the affidavit was procured based on certain false statements made by a Snellville Police Department Investigator in his search warrant application. The search warrant application essentially mirrored the allegedly false information provided to him by a U.S. Department of Homeland Security Investigations ("HSI") Special Agent, as well as the Agent's Confidential Informant regarding the location of the alleged criminal activity.[3]  However, there is some murkiness in the record regarding whether the false location information was provided deliberately

---

[3] The Police Investigator's affidavit incorrectly alleged the unlawful activity had occurred and was occurring in Gwinnett County -- as opposed to Dekalb County – and that the specified cell phone and cell phone data provided evidence of commission of a crime in Gwinnett County.  The Gwinnett Superior Court Judge granted the warrant request based on there being probable cause of commission of the crime within Gwinnett County (rather than in another county) and that the phone provided information and data of such and that the phone was intended for use in the commission of the specified crime.  (R&R, Doc. 112 at 2-4, discussing and quoting affidavit provided and warrant issued.)

2

or because the local Police Investigator misunderstood or made assumptions regarding the Special Agent's communications as to the location of criminal activity. The Magistrate Judge conducted a *Franks* hearing clearly because of the genuine issues raised by Plaintiff's motion briefing.[4] Ultimately, the Magistrate Judge, after a thorough legal and evidentiary analysis concluded, consistent with *United States v. Leon*, 468 U.S. 897, 922 (1984) and progeny, that evidentiary exclusion was not warranted by the law enforcement officers' false statements.

Judge Anand agreed with Defendant Rauda's identification of the false statements made to the Superior Court Judge in the warrant application relating to the existence of probable cause to establish criminal activity specifically *within Gwinnett County*.[5] However, the Magistrate Judge determined that these specific statements could well have been a function of miscommunication between the Police Detective with the federal HSI Agent responsible for the case or their carelessness rather than their bad faith or intentional efforts to sidestep legal requirements.[6] After reviewing the transcript and record, the Court agrees with

---

[4] See R&R, Doc. 112 at 5 (summarizing the false statements that led to the Magistrate Judge's holding the *Franks* hearing.)
[5] As the Magistrate Judge found, the Government does not dispute "that Investigator Saunders' affidavit in support of his April 30, 2018 geolocational search warrant application contained inaccuracies." (R&R, Doc. 112 at 13.)
[6] The Magistrate Judge properly noted that probable cause ironically could originally have been established if the affidavit had provided a full, detailed recounting of the investigative record as it stood at the time of the application. But for whatever reason, the Snellville police detective was not among the law enforcement officers with any first-hand knowledge of information in this case beyond his limited checking-up/observations of a few goings-on associated with the Grayland Court property during April 2018.

Magistrate Judge's Anand's analysis in this regard. Defendant has not established the requisite intent or scienter here. As the evidence adduced does not demonstrate the officers' actual intent to mislead the Superior Court Judge (directly or indirectly) regarding the facts supporting venue in Gwinnett County, imposition of the penultimate Fourth Amendment sanction of evidentiary exclusion cannot be justified. The Court notes that the HSI's Agent's working relationship with the local Snellville police investigator appears to have been routine and reliable – and why the local police investigator felt he could rely on a brief representation of the evidence provided by the HSI agent. That said, it was not professionally sensible for the HSI Agent to ask the local police investigator to present an affidavit for a broad search warrant when the affidavit was in reality based almost exclusively on the information known to the HSI agent. Nor was it wise for the Police Investigator to proceed in this fashion. Nevertheless, the false and erroneous statements provided here appear born of a fundamental error of misunderstanding or careless expediency and do not support the requested evidentiary exclusion.

Second, Defendant Rauda argues that under Georgia law (and federal law in turn), "the geolocational warrant was void ab initio because the Superior Court Judge lacked authority to issue a geolocational cell phone warrant, and/or to order tracking of a device outside of Gwinnett County under Georgia law." (R&R, Doc.

112 at 2.) Counsel for Rauda vigorously pursued this issue in his suppression motion before the Magistrate Judge and in briefing objections that this Court has fully and independently reviewed. The Court finds the Magistrate Judge's lengthy analysis of the legal issues to be persuasive and correct. Defendant has raised important legal points regarding the scope of the statutory authority under Georgia law for a Superior Court's authority and jurisdiction to authorize search warrants for real-time prospective collection of geolocational data for cell phones outside its specific jurisdiction as well as under the provisions of the federal Stored Communications Act (18 U.S.C. § 2703). Defendant Rauda's arguments contain their own interesting logic and force, but in the context of a *Franks* challenge of a search warrant, the Court cannot see how the genuine and complicated legal issues presented here translate into reliable evidence that the law enforcement officers' intentionally misled the Superior Court judge in this instance regarding his judicial authority to issue a warrant for monitoring phone data and a phone that was bound to travel between various locations and jurisdictions. The legal issue of whether the law was clear that the Gwinnett Superior Court lacked authority *ab initio* to issue a warrant to obtain current geolocational data without regard to the location of the phone or geographic definition of the Superior Court might well be properly presented in some other context – but not in the specific *Franks* context at hand.

As the Magistrate Judge concluded, given "at least debatable authority for obtaining geolocational data without strict regard for the location of the phone, the police would have had an objectively reasonable basis to rely in good faith on this warrant. Even if the Court were to accept Defendant's legal arguments …. "doing so would only 'punish the errors of judges and magistrates.'" (R&R, Doc. 112 at 37, citing *Leon*, 468 U.S. at 916, 919.) Accordingly, the Court agrees with the Magistrate Judge's recommendation and **DENIES** Defendant Rauda's Motion to Suppress. [Doc. 64].

Defendant Dominguez-Martinez's motion piggybacks on Rauda's motion. Mr. Dominguez-Martinez asserts that the warrant for the search of the truck parked in his driveway was the fruit of the poisonous tree of the alleged unlawful geolocational data search of Rauda's phone. As the Magistrate Judge found, Defendant cannot establish derivative standing based upon any unlawfully evidence obtained from his co-defendant. *U.S. v. Leon*, 468 U.S. at 910, citing *Alderman v. United States*, 394 U.S. 165, 174-175 (1969). See also, *Wong Sun v. United States*, 371 U.S. 471, 491-92 (1963).

Dominguez-Martinez also asserts that he has independent standing to challenge the search conducted of the truck (not registered to him) that was parked in his driveway. The Magistrate Judge rejected this contention based on the

Defendant's failure to establish substantive record evidence that reflects the specific configuration of the driveway where the truck was parked to demonstrate that it fell within the curtilage of the house or that Defendant even held some ownership interest in the truck or had authorized use of it. The Court recognizes the general argument made by Defendant – that the driveway's close proximity to the house might be viewed as ipso facto demonstrating the driveway fell within the home's curtilage. But the Defendant's failure to present any evidence regarding his personal interest in the truck – especially in the context of the multiple cars that appear to be parked on the driveway in the photos in the record [Doc. 73-4, 73-5] -- or the actual precise configuration of the driveway relative to the house, *in combination*, undermine Defendant's argument. The Court thus agrees with and adopts the Magistrate Judge's recommended finding. The Court therefore Court **DENIES** Defendant Dominguez-Martinez's Motion to Suppress. [Doc. 65]

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 112], **DENIES** Defendants' Motions to Suppress [Docs. 64, 65], subject to the Court hearing and ruling prior to trial on the *Miranda* voluntariness issue as to statements provided by Defendants. Defendants' Objections [119, 120] are overruled.

The Court hereby sets the trial date for Adolfo Alejandro Rauda-Constantino and Abel Dominguez-Martinez to begin on April 20, 2020, at 9:30 AM in Courtroom 2308. The pretrial conference is set for April 8, 2020, at 02:30 PM in Courtroom 2308. Each Defendant is required to attend the pretrial conference or present a written waiver of his attendance. By March 18, 2020, the parties are to file any motions in limine and proposed voir dire questions. By March 18, 2020, the Government is to file a summary of the indictment for use in voir dire. By March 25, 2020, the parties are to file any objections to those items listed above. The time from January 28, 2020, to April 20, 2020, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The parties should be prepared to provide the Courtroom Deputy Clerk with three (3) copies of your respective exhibit and witness lists at the start of trial for use by the Judge, Court Reporter, and Courtroom Deputy Clerk. Each party should also provide a courtesy copy of all exhibits for the Judge's use during trial, preferably in an appropriately labeled notebook provided on the first day of trial. The parties are referred to Local Rule 16.4(B)(19)(b), NDGa, concerning the pre-marking of exhibits. The parties <u>must</u> provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Please refer to Judge Totenberg's Guidelines to Parties and Counsel at http://www.gand.uscourts.gov/case-prep-judge-totenberg for information regarding the pretrial conference, voir dire, and courtroom technology. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed no later than three (3) days in advance of trial, to allow time for proper notification to the US Marshals Service.

It is **SO ORDERED** this 28th day of January, 2020.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**